UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                :
THOMAS R. NUGEN,                                :    CASE NO. 4:14-CV-00817
                                                :
           Plaintiff,                           :
                                                :
vs.                                             :    OPINION & ORDER
                                                :    [Resolving Docs. 1, 25, 33]
WESTERN RESERVE TRANSIT                         :
AUTHORITY,                                      :
                                                :
           Defendant.                           :
                                                :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Thomas R. Nugen brings various employment-related claims against Defendant Western Reserve Transit Authority ("Western Reserve").[1] Specifically, Nugen brings an FMLA claim, a state-law claim for wrongful discharge in violation of public policy, and a state-law claim for unpaid sick leave. Western Reserve moves for summary judgment on all of Nugen's claims.[2] For his part, Nugen asks for the dismissal without prejudice of his state law claims so that he can keep the ability to refile them in state court.[3] For the following reasons, the Court **GRANTS** Western Reserve's motion for summary judgment and **DENIES** Nugen's motion to dismiss his state law claims without prejudice.

**I. Factual and Procedural Background**

Defendant Western Reserve is a regional transit authority organized pursuant to Ohio law.[4]

---

[1] Doc. 1-1.
[2] Doc. 25.
[3] Doc. 33.
[4] Doc. 25-2 at 1.

Case No. 4:14-CV-00817
Gwin, J.

It is an Ohio political subdivision.[5] Plaintiff Nugen served as Western Reserve's Director of Transportation from 2001, when Western Reserve first hired him, until his termination on June 4, 2013.[6] Nugen participated in the Ohio Public Employees Retirement System and reported to Western Reserve's Executive Director, James Ferraro.[7]

In 2012, the Ohio Public Employees Retirement System announced that major changes in the calculation of retirement benefits would go into effect at the beginning of 2013.[8] In response, three Western Reserve employees with at least thirty years of service time planned to retire before the changes went into effect to preserve the more favorable benefit computation.[9] Ferraro, Nugen's supervisor, was one of these three employees.[10] Western Reserve determined that losing these three employees in this fashion would be detrimental to the organization, and the governing board passed a resolution permitting them to retire and be rehired on one year contracts.[11]

Nugen found out about this plan and wanted to be included. He reached out to Ferraro,[12] to Marianne Vaughn, one of the other included employees,[13] and to J.P. Brown, the President of Western Reserve's Board of Directors.[14] The timing of these contacts are disputed. Nugen alleges that Ferraro threatened him with termination if he pursued the matter further with the Board of

---

[5] *Id.*
[6] Doc. 25-3 at 20.
[7] *Id.* at 21, 23.
[8] Doc. 25-4 at 1.
[9] *Id.*
[10] *Id.*; Doc. 25-3 at 21.
[11] Doc. 25-4 at 1-2.
[12] Doc. 25-3 at 31-32.
[13] *Id.* at 27, 30.
[14] *Id.* at 32-33.

Case No. 4:14-CV-00817
Gwin, J.

Directors.[15] Western Reserve concedes this allegation "solely for purposes of [the summary judgment] Motion."[16] Nugen has acknowledged that he took these actions in an attempt to obtain the benefit of the retire and rehire plan for himself.[17]

Nugen's complaint alleges that his June 2013 termination was retaliation for his attempts to participate in the retire and rehire plan.[18] The complaint further says that the stated reason for his termination–that he failed to return to work at the conclusion of a leave–was pretextual.[19]

Turning to the background that Western Reserve says led to Nugen's termination, on March 5 or 6, 2013, Nugen informed Western Reserve that he needed leave to take care of his wife.[20] Western Reserve granted the request for leave. Western Reserve's policy, which Nugen understood, required that employees use accrued paid time off concurrently with FMLA leave.[21] FMLA leave would thus become unpaid only after the employee exhausted his accrued paid time off.[22] Western Reserve maintains that Nugen expressly declined to take FMLA leave.[23] Nugen disputes this characterization and says that Western Reserve "unilaterally[] made the decision that Nugen had to use paid leave rather than FMLA leave."[24]

During Nugen's leave, Western Reserve remained in contact with him by email.[25] In April

---

[15] *Id.* at 33-34.
[16] Doc. 25-1 at 3.
[17] Doc. 25-3 at 34-36.
[18] Doc. 1-1 at 3.
[19] *Id.*
[20] Doc. 25-3 at 72, 74.
[21] *Id.* at 76; Doc. 25-2 at 2.
[22] Doc. 25-3 at 76; Doc. 25-2 at 2.
[23] Doc. 25-1 at 4 (citing Docs. 25-2 at 2 (affidavit of Western Reserve's Director of Human Resources), 25-3 at 76 (deposition statement by Nugen that he "may have" declined to take FMLA leave)).
[24] Doc. 31 at 6.
[25] Doc. 25-3 at 39-42.

Case No. 4:14-CV-00817
Gwin, J.

2013, and then again in early May, Western Reserve asked Nugen to consider a part time or reduced schedule.[26] In response to the April request, Nugen indicated he was unable to do so.[27] he also did not return to work on a part or full time basis in May.

On May 20, 2013, Ferraro told Nugen that Western Reserve would terminate Nugen's employment if Nugen did not return to work by June 3, 2013. This threatened termination date was between twelve and thirteen weeks after Nugen's March 2013 request for leave to take care of his wife.[28] On May 27, 2013, Nugen responded that he "plan[ned] to return to work as soon as possible," but specified no return date.[29] In his deposition, Nugen said that he would not have been able to return to work before the end of June 2013 at the earliest.[30] When Nugen did not return to work on June 3, 2013, Western Reserve terminated his employment.[31]

Defendant Western Reserve now moves for summary judgment on all claims.[32] Nugen has filed an opposition, but has attached no evidence.[33] Nugen's summary judgment response addresses only his FMLA claim.[34] Nugen separately seeks dismissal without prejudice of his two state-law claims.[35] Western Reserve has filed a reply brief in support of its motion for summary judgment.[36]

**II. Law and Analysis**

**A. Summary Judgment Standard**

---

[26]*Id.* at 39-41.
[27]*Id.* at 40 ("I want to get back ASAP I am not yet comfortable leaving [my wife] alone.").
[28]*Id.* at 42.
[29]*Id.* at 99.
[30]*Id.* at 103, 140.
[31]*Id.* at 43.
[32]Doc. 25.
[33]Doc. 31.
[34]*Id.*
[35]Doc. 33. Western Reserve opposes this motion. Doc. 40.
[36]Doc. 36.

Case No. 4:14-CV-00817
Gwin, J.

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[37] The moving party must first demonstrate that there is an absence of a genuine dispute as to a material fact entitling it to judgment.[38] Once the moving party has done so, the non-moving party must set forth specific facts in the record—not its allegations or denials in pleadings—showing a triable issue.[39] The existence of some doubt as to the material facts is insufficient to defeat a motion for summary judgment.[40] But the Court will view the facts and all reasonable inferences from those facts in favor of the non-moving party.[41]

**B.     FMLA Claim**

Western Reserve says that it is entitled to summary judgment on Nugen's FMLA claim for two reasons. First, it says that Nugen received everything he was entitled to under the FMLA because he was offered the opportunity to return to his position at the end of a leave that had lasted longer the FMLA twelve-week minimum. Second, it says that Nugen cannot bring an FMLA claim at all because he expressly declined to take FMLA leave. As described below, the Court concludes that a genuine dispute of fact exists as to whether Nugen declined FMLA leave, but that this dispute is immaterial because whichever way it is resolved, Nugen cannot satisfy the elements of his FMLA claim.

<u>1. Legal Standard</u>

The FMLA permits eligible employees to take temporary leave for up to twelve weeks in a

---

[37] *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 580 (6th Cir. 2014) (quoting Fed. R. Civ. Pro. 56(a)).
[38] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[39] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[40] *Id.* at 586.
[41] *Killion*, 761 F.3d at 580. (internal citation omitted).

Case No. 4:14-CV-00817
Gwin, J.

twelve month period for qualifying reasons,[42] including "to care for [a] spouse [with] a serious health condition."[43] The FMLA prohibits employers from interfering with, restraining, or denying an employee's FMLA leave or his attempt to take leave protected by the FMLA.[44] Claims for violations of this prohibition are referred to as either entitlement claims or interference claims.

"To prevail on an entitlement claim, an employee must prove that: (1) she was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave the employer notice of her intention to take leave, and (5) the employer denied the employee FMLA benefits to which she was entitled."[45] Western Reserve concedes that Nugen satisfies the first three elements. It challenges only the fourth and fifth.

2. Analysis

As noted above, a party may not rely solely on allegations in the pleadings or briefing, but all reasonable inferences from the evidence must be drawn in favor of the non-moving party. Here, although Nugen attached no evidence to his summary judgment response, a genuine dispute of fact exists as to whether Nugen declined to take FMLA leave or not. Western Reserve points to two sources in the record to support its claim that Nugen expressly declined FMLA leave: the testimony from Nugen's deposition and the affidavit of Richard McFadden, Western Reserve's Director of Human Resources.[46] But Nugen's deposition testimony said only that he "may have" declined to

---

[42] 29 U.S.C. § 2612(a)(1).
[43] *Id.* § 2612(a)(1)(C).
[44] *Id.* § 2615(a)(1).
[45] *See, e.g., Edgar v. JAC Prods.*, 443 F.3d 501, 507 (6th Cir. 2006) (citing *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005)).
[46] Doc. 25-1 at 4 (citing Docs. 25-2 at 2, 25-3 at 76).

Case No. 4:14-CV-00817
Gwin, J.

take FMLA leave, not that he did.[47] And although McFadden's statement is not similarly ambiguous,[48] a reasonable jury could nonetheless conclude from the portions of Nugen's deposition attached to Western Reserve's summary judgment motion that Nugen intended to take FMLA leave concurrently with his accrued paid leave.

Unfortunately for Nugen, however, this genuine dispute of fact does not stop summary judgment because it is immaterial. If Western Reserve is correct that Nugen expressly declined to take FMLA leave, then Nugen's FMLA claim must fail because the record contains no evidence of a subsequent request. In the absence of such evidence, Nugen could not satisfy the requirement for bringing an FMLA interference claim that he notified his employer of his intention to take FMLA leave.

On the other hand, if Nugen did not expressly decline FMLA leave, his claim cannot succeed because he received all of the benefits the statute entitled him to. In particular, it is undisputed that Western Reserve would have allowed Nugen to return to work on June 3, 2013, more than twelve weeks after his leave began, in the same position he had previously held.

Nugen argues that Western Reserve failed to comply with Department of Labor regulations governing the notice to be provided in connection with FMLA leave. These regulations require employers to designate leave as FMLA leave [49] and to inform employees who choose or are required to take paid leave concurrently with FMLA leave that if they fail to comply with procedural requirements of the paid leave policy, they can be denied pay, but not their FMLA right to job

---

[47] Doc. 25-3 at 76.
[48] *See* Doc. 25-2 at 2.
[49] *See* 29 C.F.R. § 825.301(a).

Case No. 4:14-CV-00817
Gwin, J.

protected leave.[50] Nugen says that by failing to comply with these notice requirements Western Reserve lost the ability to count paid sick or vacation leave against the FMLA's twelve week requirement. This argument, however, is precluded by Supreme Court and Sixth Circuit precedent, as well as by other portions of the regulations themselves.

In *Ragsdale v. Wolverine World Wide, Inc.*, the Supreme Court struck down a Department of Labor regulation that categorically forbade employers from counting any leave against the FMLA's twelve-week minimum unless the employer complied with certain notice requirements.[51] The Court reasoned that the FMLA entitled an employee to twelve weeks of job-protected leave, and that the regulation's categorical penalty was inconsistent with the statute. Rather, the Court concluded, an employee must show denial of or interference with the FMLA's substantive guarantees in order to prevail on an FMLA entitlement claim.[52]

While the *Ragsdale* Court concluded that improper notice could not itself constitute prejudice, it acknowledged that in some cases it could lead to prejudice cognizable in an entitlement claim.[53] For example, an employee who needed to miss every other week of work over a twelve week period for medical treatment might be prejudiced by not receiving notice of his right to take FMLA leave on an intermittent basis.[54] If that employee used all twelve weeks of leave when he would have chosen to expend only six had he received proper notice, he would suffer prejudice if he subsequently required additional FMLA leave but had none remaining.

---

[50] *See* 29 C.F.R. § 825.207(a).
[51] *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81 (2002).
[52] *Id.*
[53] *Id.* at 93.
[54] *Id.* at 89-90; *see* 29 U.S.C. § 2612(b)(1) (allowing intermittent leave where "medically necessary").

Case No. 4:14-CV-00817
Gwin, J.

In line with the Supreme Court's holding in *Ragsdale*, the Sixth Circuit has repeatedly listed prejudice as an element of an FMLA interference claim.[55/] Likewise, other portions of the regulations cited by Nugen say that leave granted without compliance with the notice provisions may be excluded from the FMLA's twelve-week minimum if the noncompliance "causes the employee to suffer harm."[56/]

To recap, Nugen must show sufficient evidence not only that Western Reserve failed to comply with the notice regulations, but also that he was harmed or prejudiced by this failure. Only by putting forth sufficient evidence of harm or prejudice can he survive summary judgment on his FMLA entitlement claim.

Nugen, however, has put forward no evidence to suggest that different or additional notice would have changed his behavior. In fact, the evidence demonstrates precisely the opposite. Nugen concedes that he would have been unable to return to work until at least several weeks after the expiration of his job-protected leave.[57/] Moreover, during Nugen's leave, Western Reserve reached out to him on multiple occasions about the possibility of his working part time or on a reduced schedule.[58/] That Nugen did not do so suggests that intermittent leave was not a possibility for him.[59/]

No reasonable jury could conclude from the evidence before the Court that Nugen was prejudiced by any failure to provide notice. Although there may be genuine disputes of fact, they are immaterial, and the Court will therefore **GRANT** Defendant Western Reserve's motion for

---

[55/]*See, e.g.,* Edgar v. JAC Prods., 443 F.3d 501, 507 (6th Cir. 2006) (citing Walton v. Ford Motor Co., 424 F.3d 481, 485 (6th Cir. 2005)).

[56/]29 C.F.R. § 825.301(e).

[57/]*Id.* at 103, 140.

[58/]Doc. 25-3 at 39, 41.

[59/]*Cf. id.* at 40 ("I want to get back ASAP I am not yet comfortable leaving her alone.").

Case No. 4:14-CV-00817
Gwin, J.

summary judgment on Plaintiff Nugen's FMLA claim.

**C. State Law Claims**

1. Supplemental Jurisdiction

Having granted Defendant Western Reserve summary judgment on Plaintiff Nugen's FMLA claim, the Court must decide whether to exercise pendent jurisdiction over Nugen's state law claims.

Supplemental jurisdiction permits a district court to hear claims that are "so related to claims" that provide an independent source of jurisdiction "that they form part of the same case or controversy under Article III."[60] A district court, however, "may decline to exercise supplemental jurisdiction" if, among other things, it "has dismissed all claims over which it has original jurisdiction."[61] "In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'"[62] "'When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed.'"[63]

This rule is not absolute. The Sixth Circuit has upheld the discretionary exercise of supplemental jurisdiction after the dismissal of all federal claims in a case where the Plaintiff engaged in forum manipulation, discovery was complete, and summary judgment motions were ripe for decision.[64] But the Sixth Circuit has also said that district courts should avoid "needlessly

---

[60] 28 U.S.C. § 1367(a).
[61] 28 U.S.C. § 1367(c)(3).
[62] *Gamel v. City of Cincinnati*, 625 F.3d 949, 951-52 (6th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).
[63] *Id.* (citing *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996)).
[64] *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195 (6th Cir. 2004).

-10-

Case No. 4:14-CV-00817
Gwin, J.

deciding state law issues."[65] This consideration is especially weighty where the state law question is "novel or complex."[66]

In the present case, the Court concludes that resolution of the state law claims is proper. Discovery is already advanced, and Defendant's summary judgment motion is ripe for resolution. Importantly, the state-law questions at issue here are neither novel nor complex. Even assuming that Plaintiff Nugen has not engaged in forum manipulation, the Court concludes that the efficiency interests justify the continued exercise of supplemental jurisdiction.

The Court further determines that Plaintiff Nugen's motion to voluntarily dismiss his state-law claims without prejudice does not change this conclusion. Nugen suggests in passing that supplemental jurisdiction may not have been proper as to the state claims to begin with.[67] The Court disagrees. All three claims arise out of the same transaction or occurrence, namely, Nugen's termination. Although the causes of action each involve different legal theories of recovery, and although each requires consideration of some facts not implicated in the others, each claim encompasses interrelated consideration of the circumstances surrounding Nugen's termination. The state law claims are thus "so related to" the FMLA claim "that they form part of the same case or controversy under Article III."[68]

Because supplemental jurisdiction is proper, and because Defendant Western Reserve had already submitted summary judgment briefing on the state law claims prior to Plaintiff Nugen's motion, the Court concludes that dismissing the claims without prejudice would be unfair to Western

---

[65] *Id.* at 211 (citing *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993)).
[66] *See* 28 U.S.C. § 1367(c)(1).
[67] Doc. 33.
[68] 28 U.S.C. § 1367(a).

-11-

Case No. 4:14-CV-00817
Gwin, J.

Reserve. Having been forced to defend this suit to summary judgment in one court, they should not be required to do so again. Allowing Nugen to wait until the expiration of the respective statutes of limitations to decide whether to refile his claims in state court would essentially give Nugen extra time not contemplated by the Federal Rules to respond to Western Reserve's motion for summary judgment.

The Court concludes that it has the power to adjudicate Nugen's state law claims, that doing so is a proper exercise of its discretionary supplemental jurisdiction, and that the claims should not be dismissed without prejudice. The Court thus will **DENY** Nugen's motion to dismiss his state law claims and will proceed to rule on Defendant Western Reserve's summary judgment motions on those claims.

\*\*\*

Defendant Western Reserve has advanced arguments and pointed to evidence that suggest the absence of a genuine issue of material fact as to both of Plaintiff Nugen's state law claims. For his part, Nugen has neither submitted any evidence nor advanced any argument in response to Western Reserve's motion for summary judgment on these claims. Having examined Western Reserve's arguments, the Court concludes that summary judgment is proper for these claims as well.

2. Wrongful Discharge in Violation of Public Policy

As to Nugen's allegation that he was wrongfully discharged in violation of public policy, the Court concludes that Nugen's failure to point to any clear public policy is fatal to his claim. To state a public policy wrongful discharge claim, Plaintiff must show that: (1) a "clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element)"; (2) "dismissing employees under circumstances like those

Case No. 4:14-CV-00817
Gwin, J.

involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element)"; (3) Plaintiff's "dismissal was motivated by conduct related to the public policy (the *causation* element)"; and (4) Plaintiff's employer "lacked overriding legitimate business justification for the dismissal (the *overriding justification* element)."[69]

The clarity and jeopardy elements are issues of law for the court's determination, while the causation and overriding justification elements are questions for the fact finder.[70] Nonetheless, the plaintiff must establish a genuine issue of material fact as to each element of his wrongful discharge claim.[71]

Nugen's claim falters on the first element. His complaint cites to "among other things, Article , [sic] Section [sic] of the Constitution of the State of Ohio."[72] Nugen has not endeavored to fill in these blanks in any subsequent filing. Construing Nugen's complaint liberally, it appears best understood as alleging that Western Reserve wrongfully discharged him in violation of Ohio's public policy set out in Article I, Section 11 of the Ohio Constitution by terminating his employment in retaliation for his exercise of his right to free speech.[73] But even on this construction, Nugen's concession that his speech was purely on a matter of private concern–gaining access to the retire and rehire plan for himself–renders his claim unwinnable.

Because "Article I, Section 11 of the Ohio Constitution is interpreted in lockstep with the

---

[69]*Dohme v. Eurand Am., Inc.*, 956 N.E.2d 825, 829 (Ohio 2011).
[70]*Id.*
[71]*Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003).
[72]Doc. 1-1 at 3.
[73]*Id.* at 3 ("Ferraro caused and orchestrated Nugen's termination from [Western Reserve] in order to punish Nugen for questioning the 'retirement' rehire plan . . . and for requesting permission to speak with [Western Reserve] board members about the 'retirement' rehire plan.").

-13-

Case No. 4:14-CV-00817
Gwin, J.

First Amendment to the U.S. Constitution,"[74/] the Court turns to First Amendment case law. Public employees retain First Amendment protection, but only when they speak as "citizen[s] upon matters of public concern."[75/] By contrast, Nugen sought only to obtain for himself the benefit of a particular employment arrangement offered to other employees.[76/] In doing so, he spoke "as an employee upon matters of only personal interest" rather than "as a citizen upon matters of public concern."[77/]

The Court will therefore **GRANT** Defendant Western Reserve's motion for summary judgment on Plaintiff Nugen's wrongful discharge in violation of public policy claim.

### 3. Accumulated Sick Leave

Nugen's third claim is that Western Reserve failed to compensate him for the sick leave he had accumulated at the time of his termination.[78/] Western Reserve responds that its policy provides compensation for unused sick leave to employees who are laid off or resign, but not to employees who are terminated for cause.[79/] Termination for failure to return to work when lawfully required to do so gave cause for the firing.

The question becomes somewhat closer because in the portion of Nugen's deposition transcript attached to Western Reserve's summary judgment motion, Nugen indicates that "[p]ast practice at [Western Reserve] has paid sick time to people that have been terminated."[80/] Upon further questioning, however, Nugen revealed that these employees had been "allowed to resign.

---

[74/] *Logsdon v. Haines*, 492 F.3d 334, 347 (6th Cir. 2007) (citing *Eastwood Mall, Inc. v. Slanco*, 626 N.E.2d 59, 61 (Ohio 1994)).
[75/] *Connick v. Myers*, 461 U.S. 138, 147 (1983).
[76/] Doc. 25-3 at 34-36.
[77/] *Connick*, 461 U.S. at 147; *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 542 (6th Cir. 2007).
[78/] Doc. 1-1 at 4.
[79/] Doc. 25-3 at 120.
[80/] *Id.* at 121.

-14-

Case No. 4:14-CV-00817
Gwin, J.

They were terminated . . . and they were allowed to resign and given their sick pay."[81] Here, however, nothing in the record indicates that Nugen was permitted to resign in lieu of termination. Indeed, the letter terminating Nugen suggests that he was not.[82]

Thus, even resolving all factual conflicts and drawing all reasonable inferences in favor of Nugen, the non-moving party, the Court concludes that Nugen has failed to demonstrate the existence of a genuine issue of material fact on his claim for unpaid sick leave. The Court thus will **GRANT** Western Reserve's motion for summary judgment on this claim.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant Western Reserve's motion for summary judgment and **DENIES** Plaintiff Nugen's motion to dismiss his state law claims without prejudice.

IT IS SO ORDERED

Dated: November 10, 2014

s/ *James S. Gwin*
JAMES S. GWIN
UNITED STATES DISTRICT JUDGE

---

[81] *Id.*
[82] *Id.* at 43.